IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HP DISTRIBUTION, LLC, and
TANNER CUNNINGHAM,

          Petitioners,

v.                                          Case No. 14-mc-237-JAR-TJJ

UNITED STATES OF AMERICA,

          Respondent.

## REPORT AND RECOMMENDATION

### NOTICE

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), may file written objections to this Report and Recommendation. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

**I.    NATURE OF THE MATTER BEFORE THE COURT**

By Order dated October 30, 2014 (ECF No. 3), District Judge Julie A. Robinson referred this case to the undersigned Magistrate Judge. At the time of the referral, the only pending matter was Petitioners HP Distribution, LLC and Tanner Cunningham's Petition to Quash Summons (ECF No. 1). Respondent later filed its Motion of the United States for Summary

1

Judgment (ECF No. 11).[1]  Both the Petition and the Motion for Summary Judgment are now before the undersigned Magistrate Judge for a report and recommendation.[2]

In their Petition, Petitioners ask the Court to quash two Financial Records Summonses issued by the Internal Revenue Service (IRS) to Corefirst Bank & Trust and JPMorgan Chase Bank.  These summonses request records and account information relating to HP Distribution, LLC and Tanner Cunningham for the period January 1, 2012 to September 1, 2014.[3]  Petitioners assert that the summonses are overbroad, that Petitioner Tanner Cunningham is not liable for any of the taxes alleged to be owed, and that the IRS has provided no explanation for seeking documents that fall outside the tax periods at issue.  After reviewing the Motion for Summary Judgment and the supporting and responsive briefs, the Court recommends that the district judge grant the motion and deny the Petition.

## II.   FINDINGS OF FACT

The following facts are uncontroverted.[4]

---

[1] The government also filed a motion seeking an extension of time to answer or otherwise respond to the Petition until after the Court rules on its summary judgment motion (ECF No. 13), which the Court granted (ECF No. 14).

[2] The undersigned Magistrate Judge finds that the Petition and Respondents' summary judgment motion are both dispositive in nature.  Accordingly, this Court issues this Report and Recommendation for the district judge's consideration.  *See Strong v. United States*, 57 F. Supp. 2d 908, 912-14 (N.D. Cal. 1999).

[3] *See* Summons (ECF No. 1-2) at 1; (ECF No. 1-3) at 1.

[4] The government's memorandum in support of its summary judgment motion contains a statement of facts with citations to the portion of the record and an affidavit upon which the government relies.  *See* ECF No. 12 at 2-6.  Petitioners include no such statement of facts in their response, nor do they respond to the government's statement of facts.  Pursuant to D. Kan. R. 56.1(a), all material facts set forth in the government's statement are deemed admitted for the purpose of this summary judgment motion because they are uncontroverted.  Accordingly, the Court adopts the government's statement of facts.

A.      The Summonses

On October 8, 2014, the Internal Revenue Service (IRS) issued Financial Records Summonses to two financial institutions, CoreFirst Bank & Trust and JPMorgan Chase Bank, seeking financial records of HP Distribution, LLC.  Each summons is captioned "In the matter of Tanner Cunningham, Member, HP Distribution LLC," and each seeks financial records of HP Distribution, LLC.[5]  Each summons describes the periods to which it applies as "Form 2290 for the periods ending July 31, 2013 and October 31, 2013 and Form 941 for the quarterly period ending March 31, 2014."[6]  More specifically, each summons requests the following documents relating to HP Distribution LLC for the period from January 1, 2012 to September 1, 2014: (1) bank signature cards, (2) corporate resolutions, (3) bank statements, (4) six cancelled checks issued each month, and (5) loan applications, agreements, and related records submitted by, entered into by, or in effect during the time period.  In addition, each summons requests a copy of all deposit items from January 1, 2012 to December 31, 2012.[7]

B.      The Partnership

Craig Cunningham ("Craig") was the general partner of HP Distribution, LLP ("The Partnership") until it was dissolved in the second quarter of 2012.  Craig managed the finances of The Partnership and was in charge of making timely tax deposits.  Craig's son, Petitioner Tanner Cunningham ("Tanner"), was an employee of The Partnership and in charge of trucking operations.

---

[5] *See* ECF Nos. 1-2 at 1; 1-3 at 1.

[6] *See* ECF Nos. 1-2 at 5; 1-3- at 5.

[7] *Id.*

The Partnership currently owes employment taxes (Form 941) for the periods ending March 31, 2011, June 30, 2011, and June 30, 2012; highway use taxes (Form 2290) for the periods ending December 31, 2009, December 31, 2010, and December 31, 2012; and FUTA taxes (Form 940) for the periods ending December 31, 2011, and December 31, 2012.

Craig was responsible for paying to the IRS the taxes which The Partnership withheld from its employees' paychecks. The Partnership failed to pay to the IRS the withholdings from its employees for the periods ending March 31, 2011, and June 30, 2011. The IRS, therefore, assessed a trust fund recovery penalty (TFRP) under 26 U.S.C. § 6672 against Craig for those periods. As of January 12, 2015, he owed money for the periods ending March 31, 2011, and June 30, 2011, respectively.

    C.    The Company

The Partnership allegedly entered into an asset purchase agreement to sell all of its operating assets to HP Distribution, LLC ("The Company"). Tanner and Craig's wife, Kim Cunningham, are purportedly the owners of The Company. Craig has claimed that he manages The Company's finances, but is not compensated for his work. During an interview with the IRS, Craig's attorney said that Craig is not compensated to avoid collection from "other creditors." Craig has access to The Company's car and credit cards, and he has expressed his intent to eventually become a 49 percent owner of The Company.

Because it appears that The Company has set up Craig's compensation to avoid an IRS levy, the IRS is considering whether to assess a TFRP against Tanner to collect The Company's unpaid liabilities. If the requirements of Section 6672(a) of the Internal Revenue Code are met, a TFRP may be assessed against an individual in an LLP or an LLC who has the status, duty, and authority to avoid a default in the collection or payment of federal taxes.

The Company currently owes employment taxes (Form 941) for the periods ending March 31, 2014, and June 30, 2014; and highway use taxes (Form 2290) for the periods ending July 31, 2013, October 31, 2013, and July 31, 2014.

        D.        Issuance of the Summonses

The summonses were issued by IRS Revenue Officer Anthony Ingo, who also supplied the affidavit upon which the government relies in support of its summary judgment motion. In the summonses, Ingo lists every period that had been assigned to him to collect. He did not include the two later periods for the taxes owed by The Company (the employment tax liability for the period ending June 30, 2014, and the highway use tax liability for the period ending July 31, 2014), because those liabilities either had not yet been assessed or were not assigned to him on the date he issued the summonses.

Revenue Officer Ingo issued the summonses for four reasons: (1) to investigate the possible assessment of a TFRP against Tanner as a managing member of The Company; (2) to determine if The Company has the ability to pay its tax liabilities, or has fraudulently transferred assets to other entities; (3) to determine if The Company actually paid The Partnership as stated in the asset purchase agreement; and (4) to determine if a successor in interest or nominee lien should be filed against The Company regarding The Partnership's liabilities.

The books, records, papers, and other data sought by the summonses were not already in the possession of the IRS when the summonses were issued.

It is necessary to obtain the testimony and to examine the books, records, papers, and/or other data sought by the summonses because they may be relevant in properly collecting the federal tax liabilities of HP Distribution, LLC.

As of the date the summonses were issued and served, and as of the date Ingo signed his declaration, the IRS had not recommended to the U.S. Department of Justice that Tanner Cunningham or HP Distribution, LLC be criminally prosecuted. No Department of Justice referral, as defined by 26 U.S.C. § 7602(d)(2), was in effect with respect to Tanner Cunningham or HP Distribution, LLC, for the periods under investigation.

The IRS has followed all administrative steps required by the Internal Revenue Code for issuance of the summonses.

## III. LEGAL STANDARDS

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further provides that the party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"The court need consider only the cited materials, but it may consider other material in the record."[8] When ruling on a motion for summary judgment, the general rule is that a court must view the evidence and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.[9] In the § 7602 summons context, however, traditional

---

[8] Fed. R. Civ. P. 56(c)(3).

[9] *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

summary judgment standards such as viewing the facts in the petitioner/nonmovant's favor do not apply.[10]  Instead, the burden on the nonmovant in an action relating to enforcement of an IRS summons is "much more stringent," and the party resisting the summons "must do more than just produce evidence that would call into question the Government's *prima facie* case.  The burden of proof in these contested areas rests squarely on the taxpayer."[11]

The IRS served the summonses at issue pursuant to 26 U.S.C. § 7602, which grants the IRS broad powers to determine tax liability.  Specifically, § 7602(a)(1)–(2) authorizes the IRS to "examine any books, papers, records, or other data which may be relevant or material to such inquiry" and to "summon the person liable for tax."  This summons power must be construed broadly "in order to ensure that the enforcement powers of the IRS are not unduly restricted."[12]  In that vein, the standard of "relevance" for purposes of a § 7602 summons is lower than general standards of "relevance" for admissibility purposes.[13]  "Relevance" in the § 7602 summons context includes "items of even *potential* relevance to an ongoing investigation" and items that "might throw light" on a taxpayer's return.[14]

The summonses in this case are third-party summonses, for which Congress established the special procedures set forth in 26 U.S.C. § 7609.  It is § 7609 that establishes the action Petitioners bring, *i.e.* a proceeding to quash the summonses served on Corefirst Bank & Trust

---

[10] *Villarreal v. United States,* 524 F. App'x 419, 423 (10th Cir. 2013).

[11] *Id.*

[12] *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985).

[13] *Villareal v. United States*, 524 Fed. App'x 419, 423 (10th Cir. 2013).

[14] *Id.*

and JPMorgan Chase Bank.[15]  Under § 7609, both The Company and Tanner are entitled to begin a proceeding to quash, and during the proceeding the IRS is entitled to seek to compel compliance with the summons.[16]

The Supreme Court affirmed the authority of the IRS to summon books and records in *United States v. Powell*.[17]  *Powell* also sets out the standards courts use to determine whether the IRS appropriately exercised that authority.  The Tenth Circuit applied the *Powell* rule in *United States v. Balanced Financial Management, Inc.*,[18] describing the burden on the IRS as "a slight one" to show that: (1) the investigation was conducted pursuant to a legitimate purpose; (2) the inquiry was relevant to that purpose; (3) the information sought is not already within the IRS's possession; (4) and all administrative steps required by the Internal Revenue Code have been

---

[15] *See* 26 U.S.C. § 7609(b).  The Court concludes that it is without jurisdiction to determine the motion to quash with respect to JPMorgan Chase Bank.  The summons lists the Bank's location as Tampa, Florida.  *See* Financial Records Summons (ECF No. 1-3) at 1.  Under 26 U.S.C. § 7609(h)(1), jurisdiction to determine motions to quash IRS summonses lies in the United States district court for the district where the party summoned resides or is found.  The undersigned Magistrate Judge therefore recommends that the Petition be dismissed insofar as it seeks to quash the summons issued to JPMorgan Chase Bank.  *See Abell v. Sothen*, 214 F. App'x 743, 756-57 (10th Cir. 2007).  The governments points out the jurisdictional defect but does not seek dismissal on this basis because JPMorgan Chase Bank informed the IRS that it does not have any responsive records.  A federal court cannot be bound by the parties' acts or pleadings, however, but must satisfy itself that it has jurisdiction at every stage of the proceedings.  *Tafoya v. U.S. Dep't of Justice*, 748 F.2d 1389, 1390 (10th Cir. 1984).

[16] Tanner received notice of the summonses because he is identified therein.  *See* 26 U.S.C.§ 7609(a)(1).  Any person who is entitled to notice of a summons has the right to begin a proceeding to quash such summons.  §7609(b)(2)(A).  The petition to quash must be brought within twenty days after notice of the summons is given to the taxpayer.  *Id.*  Petitioners timely filed their petition.

[17] 379 U.S. 48 (1964).

[18] 769 F.2d 1440 (10th Cir. 1985).

followed.[19] Stated succinctly, "the IRS need only demonstrate good faith in issuing the summons."[20] The IRS generally meets this burden by affidavit from the investigating IRS agent.[21]

The burden then shifts to the party resisting enforcement; that burden is a heavy one.[22] The resisting party may urge the court to quash the summons on any appropriate ground,[23] but to be successful the resisting party must show that the IRS lacked good faith in issuing the summons.[24] To meet this burden, the resisting party must support its factual allegations by affidavit; it is not enough to produce evidence that would simply call into question the government's *prima facie* case.[25] If the resisting party does not meet this "heavy burden," the court should "dispose of the proceeding on the papers before it and without an evidentiary hearing."[26]

**IV.   ANALYSIS**

    *A.   IRS Burden*

---

[19] *Id.* at 1443 (quoting *Powell*, 379 U.S. at 57–58).

[20] *United States v. Clarke*, 134 S. Ct. 2361, 2365 (2014) (quoting *United States v. Stuart*, 489 U.S. 353 (1989)).

[21] *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1443.

[22] *Id.* at 1444.

[23] *Clarke*, 134 S. Ct. at 2365.

[24] *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1444.

[25] *Id.* at 1443.

[26] *Id.* at 1444.

The Court's review of the record indicates that the government has satisfied all of the *Powell* factors and has met its burden to show that the summonses are within the agency's enforcement authority.  First, the affidavit submitted by Revenue Officer Anthony Ingo sets out the legitimate purposes for the Financial Records Summonses. Those legitimate purposes are: "(1) to investigate the possible assessment of a trust fund recovery penalty against Tanner [Cunningham] as a managing member of The Company; (2) to determine if The Company has the ability to pay its tax liabilities, or has fraudulently transferred assets to other entities; (3) to determine if The Company actually paid The Partnership as stated in the asset purchase agreement; [and] (4) to determine if a successor in interest or nominee lien should be filed against The Company regarding The Partnership's liabilities."[27]  Second, the requested materials—Tanner Cunningham and HP Distribution's bank records—have at least potential relevance to the legitimate purposes of the investigation because they document Cunningham and HP Distribution's finances for relevant periods.  Lastly, the affidavit submitted by Officer Ingo certifies that the information is not presently within the IRS's possession and that the IRS has followed all necessary administrative steps.[28]  The Court finds that the government has successfully met the *Powell* factors.

### B.     *Taxpayer Burden*

Because the government has satisfied its initial burden, the burden shifts to the taxpayer.  As discussed above, this heavy burden requires the resisting party to show that the IRS lacked good faith in issuing the summons.  To meet this burden, the resisting party must go beyond

---

[27] Memo. Supp. Mot. Summ. Judgmt. (ECF No. 12) at 5–6, ¶ 25 (quoting Ingo Decl. (ECF No. 12-1) at 5, ¶ 12).

[28] Ingo Decl. at 5, ¶¶ 13, 16.

"mere legal conclusions" or "memoranda of law" and must "factually oppose the Government's allegations by affidavit."[29]  Petitioners do not allege that enforcement would be an abuse of process or that the IRS lacked good faith in issuing the summonses.

Instead, Petitioners argue that under traditional summary judgment standards, a Rule 56(f) continuance would be appropriate to allow them additional time to perform discovery relating to their theory of the case.[30]  However, the traditional summary judgment approach does not apply in the context of a petition to quash a § 7602 summons.  The general rule is that discovery is available in summons enforcement proceedings only in extraordinary situations, and the taxpayer must make a substantial preliminary showing of abuse of the court's process before a court will order even limited discovery.[31]  Here, Petitioners do not factually dispute by affidavit that the enforcement of the § 7602 summonses would be an abuse of process or that the IRS lacked good faith.  Instead, Petitioners' counsel submits an affidavit which sets out the discovery he would like to engage in, but the only support he offers is that "[d]iscovery on these topics will provide a basis for Petitioners to fully respond to the Respondent's Motion for Summary Judgment."[32]

---

[29] *Villarreal*, 524 F. App'x at 423.

[30] Response (ECF No. 16) at 2–4.

[31] *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1445.

[32] Affidavit of Kurt S. Brack (ECF No. 16-1) at 2.  In their response, Petitioners point to the government's argument that the summonses were necessary to determine whether to issue an assessment to Tanner, but that the IRS issued an individual assessment against Tanner on December 9, 2014 without waiting for the summonsed documents.  Petitioners argue that they should be able to "test the previous assertions as well as the new assertions."  ECF No. 16 at 6.  This argument is unavailing, as the validity of an IRS summons is judged as of the time of issuance.  *Clarke*, 134 S. Ct. at 2369.

11

Petitioners have not satisfied their heavy burden to show that they are entitled to discovery, nor have they advanced any dispute as to a material fact or offered a countervailing legal argument.  It is therefore appropriate for the Court to dispose of these proceedings by ruling on Respondent's summary judgment motion without holding an evidentiary hearing.[33]

Accordingly, for the foregoing reasons, the undersigned Magistrate Judge recommends that the district judge (1) dismiss the Petition as to JPMorgan Chase Bank for lack of jurisdiction; (2) deny the Petition to Quash; and (3) enter summary judgment in favor of Respondent.

### RECOMMENDATIONS

**IT IS THEREFORE RECOMMENDED THAT** the Petition to Quash Summons (ECF No. 1) be DISMISSED as to JPMorgan Chase Bank for lack of jurisdiction pursuant to 26 U.S.C. § 7609(h)(1).

**IT IS FURTHER RECOMMENDED THAT** the Petition to Quash Summons (ECF No. 1) be DENIED.

**IT IS FURTHER RECOMMENDED THAT** the Motion of the United States for Summary Judgment (ECF No. 11) be GRANTED.

Respectfully submitted.

Dated in Kansas City, Kansas, on this 5th day of May, 2015.

                                                    s/  Teresa J. James
                                                  Teresa J. James
                                                 United States Magistrate Judge

---

[33] *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1444.